This is case No. 20-1257, Chen v. Jung. We will proceed with counsel as before. Okay, Mr. Tan, we're ready. May it please the court. The district court in Chen v. Jung made two errors in dismissing the case. First, under Ninth Circuit law, the district court is required to consider the five gazali factors, but the district court never waited. Under the gazali factors, which this court can evaluate independently, the case should not be dismissed. Second, the district court made a finding that Dr. Chen consented to the dismissal of his case in Chen v. Jung. The findings in the case made it crystal clear that Dr. Chen opposed the motion to dismiss. He entered into a stipulation with the defendants for a short stay, but he never consented to dismissal. So that finding is an error. Finally, defendants... Counsel, let me ask you, even if we agree with you on both of those points, we have the authority to affirm the judgment of the district court on any ground. And your friend on the other side argues that we should affirm it. Assuming we affirm on Chen 1, we should affirm in this case based on race judicata and collateral estoppel principles. Why isn't that the case, assuming that we would affirm the Chen 1 determinations? Under that situation, at least the 2-6-1 patent in Chen 2, that part of the case should still proceed because that patent was not issued when Chen 1 was filed. It was issued three months after Chen 1 was filed, and Chen 1 was under a very fast... Let me ask you this question, though. With respect to the 2-6-1, I have a couple questions. One is, is the claims of inventorship are identical as it relates to the 2-6-1? In other words, the very contributions that you asserted in the prior case are the same contributions that you claim justify inventorship in your name under the 2-6-1, right? The actions of Dr. Chen that led to a claim of joint inventorship are the same, but you have to correlate that to the actual claims of the patent under dispute, and the district court judge should be the one doing that. Well, every claim in the 2-6-1 relates to the A-series compound, correct? It does, but it has additional limitations as well. Okay, but you don't actually assert that any particular claim was... that you're entitled to inventorship on any particular claim, isn't that right? You just said on every single claim. That's true. We have not specifically pointed to a particular claim in the pleading in the complaint. However, in the complaint, paragraph 76, Dr. Chen did say that he conducted in vivo mouse studies, including choosing the formulations designed by him. That has relevance to some of the limitations in the claims, but the point really is the district court judge should be the one to make that determination first. This is Judge Toronto. Do I understand right or do I... I think I remember correctly in your gray brief, after the red brief said claim preclusion, issue preclusion, you came back in the gray brief and spoke about how the 2-6-1 patent was not part of the first case. Joint inventorship depends on the particular claims. Nobody has said anything about the particular claims. You don't say anything in your gray brief at all about the three patents that are in both cases in responding to the red brief's argument for either claim or issue preclusion. We do agree with the defendants that the disposition of the first case will have a great impact on the second case. But again, that's an issue that the trial judge had the occasion to consider, but he didn't consider those factors on whether preclusion actually applies. Also, when we were submitting these briefs, the court's opinion in Dana-Farber v. Ono-Farma hasn't come out yet. We believe there's actually a change in law which may actually prevent the application of issue preclusion on these patents. That's another issue that the trial court should consider. We would be considering Dana-Farber, would we not, in the Chen-1 case? I mean, it's law governing the legal analysis of the joint inventorship claim. That is correct, yes. So, it will really depend on not just the outcome of the Chen-1 appeal, but also what is the basis for a potential affirmance. During the trial and during the judgment issued in the district court, during that time period, Dana-Farber was not available. And Dana-Farber actually said that even if a joint inventor's contribution was published in a journal article, in a journal of experimental medicine in that case, it could still be considered. In the case below, in Chen-1, we never really considered Dr. Chen's contribution in his Nature Medicine paper that's published in early 2004 or the end of 2003, depends on if it's online or in print. During that time, the RD project, the drug discovery project, had already been underway for almost a year. And the facts parallel actually are very similar. In the Dana-Farber case method patent, just like the 689 patent claims in our case, in that case, the journal of experimental medicine disclosure was attacking PD-1 receptor could possibly treat cancer. In our case, the Nature Medicine article's disclosure was attacking the androgen receptor in these drug-resistant prostate cancer patients could be useful to treat this type of cancer. So the factual parallel is actually very similar. Because of this changing law, I think the issue of preclusion issue will have to be reconsidered. But to the extent that all that evidence existed, you're not saying that evidence didn't exist at the time of the Chen-1? It existed, and it was actually in the trial record as well in Chen-1. But because the court relied on the then-prevailing law in deciding Chen-1, and now that there's an intervening changing law, whether the district court can then apply res judicata on Chen-2, again, it's an issue that the district court judge on remand should consider. But you could have made the same arguments that were made in the Dana-Farber case in the first case, correct? It's not an intervening change in the law. It's just an opinion talking about what the law is. Well, before in HESS, the law was that if something is already published, it's in the public domain, that it enters the storehouse of common knowledge, then you can't rely on that for joint inventorship, and that's in FALANA as well. So we do believe there's a changing law, and that's an issue. Let me just point out that the facts in Dana-Farber, as you know, were quite different. There was collaboration. There were trips from one country to another, personal meetings, exchanges of information, and certainly the facts in that case contributed to the analysis. Now, I agree that Dana-Farber did not change the law. It applied the law to that particular case. And so I think to be straightforward, it's helpful to guide as to how the law, in your view, applies in this case. Actually, Your Honor, in Dana-Farber, the two groups of inventors, joint inventors, did have a falling out after the Cambridge inventors decided to file a provisional patent application. What does that have to do with it? So the collaboration did not go all the way through to the end. In our case, Dr. Chen was an active participant in all the ACR studies for the RD series, so there was collaboration. The factual analogy, the factual parallel between our case and Dana-Farber are really strong. So we believe Dana-Farber could apply to the set of facts in our case and compel a different result from Chen 1. But then, again, our main argument really is for Chen 2 involving a different patent with different factual allegations as well in the complaint. Chen 2 should not be dismissed without an analysis. Okay, that's the rebuttal signal. Any more questions at this time for Mr. Tang? No. All right, we'll hear from Mr. Sepko and we'll save your rebuttal. Okay, Mr. Sepko. Good morning again, Your Honors, and may it please the Court. As an initial matter, I'd like to directly address the two errors that my colleague identified. First, he said the district court erred by not considering the Ghazali factors. I don't believe there's a single case that's been cited by either side that's identified the failure to expressly address the Ghazali factors as reversible error. Instead, the law in the Ninth Circuit is clear that the appellate court conducts an independent review of the Ghazali factors. Second, counsel said that Judge Klausner erred by finding that Dr. Chen consented to the motion to dismiss. That's not what happened below, as the record clearly shows. Judge Klausner determined, based on the local rules of the Central District of California, that he was authorized to construe the untimely opposition to the motion to dismiss as consent to that motion. The issue before this Court is really whether Judge Klausner abused his discretion in granting the motion to dismiss on procedural grounds. And the facts are compelling here. Dr. Chen, no question, filed his opposition late. That reflected a blatant disregard of the district court's local rules and really was an affront to Judge Klausner, who just the day before had issued his decision in the Chen 1 case, and the opposition that Dr. Chen filed all but ignored that decision. Even if the approach to this litigation was problematic, it's pretty clear in the Ninth Circuit that dismissal as a sanction is a big step, right? No question, Your Honor. It is a big step. But the facts that were before Judge Klausner, I think, demonstrate that he did not abuse his discretion. In the proceedings below, the supposed reason why Dr. Chen filed his opposition brief late was because he was relying on the stipulation to stay the case. Now, the local rules say, and the judge's standing orders say that you don't rely on a stipulation until it's been entered by the court. But even if that was the reason why the opposition was late, the opposition that was filed made no attempt to explain the implications of the Chen 1 decision on the issues before the court in the motion to dismiss. Did Judge Klausner make that point? Did he look to the content of the late opposition that was filed in his decision? I believe he did, Your Honor. If you look at Joint Appendix page 1, in the two sentences preceding his reference to the inexplicable late filing, Judge Klausner wrote, and I quote, Plaintiff did not file his opposition to the motion until November 7, 2019, only 11 days before the hearing date. Neither plaintiff's opposition nor the accompanying declaration, DE 43, attempt to provide justification for plaintiffs failing to comply with this court's local rules, and the court finds none. I guess I understood those words, and I'm still understanding those words to mean no explanation for lateness. I took you to be making a distinct point, no explanation to distinguish the substance of the just issued ruling in the previous case. That was my point, Your Honor, and I think that's a fair reading of Judge Klausner's use of the word inexplicable here. He clearly read the papers, and that's indicated by the comments that I just read, and it's worth noting that at no time below did Dr. Chen offer any excuse for either the late filing or explain why the Chen 1 decision didn't bar the claims that he was trying to pursue below. Can I just change the subject just a little bit? Assume for purposes of this question that the actual ground of dismissal would require a vacator and remand. Why would we not leave either all four of the patents or at least the 261 for a remand to consider questions of preclusion? Your Honor, if the court were to conclude that Judge Klausner did abuse his discretion in granting the motion to dismiss on procedural grounds, this court certainly has the authority to look at those issues in the first instance, and I believe there's enough information in the record before it to reach the conclusion that those claims are precluded. However, it's probably most efficient for this court to remand for specific findings on that. However, I don't think the court needs to go there. The court can find, based on an independent review of the Ghazali factors, that Judge Klausner did not abuse his discretion. And the Ghazali case itself is instructive as to the scope of a district court's discretion in enforcing its local rules. In that case, the court affirmed a grant of a motion to dismiss based solely on the showing that the pro se plaintiff had notice of the motion and ample time to respond. Here, Dr. Chen was clearly represented by competent counsel, so he doesn't have those excuses. Counsel, what role does the fact that the motion to amend to add the request that certain inventors be struck from Chen 1 was denied, and denied partially because the court found it to be inappropriate, sort of retaliatory action. What role does the fact that that had just happened when the new case was filed have with respect to the court's discretion under the Ghazali factors? Well, I think the facts in the Chen 1 case certainly informed the judge's decision and certainly colored his view of this case. As you note, the motion to amend to add additional defendants and try to have them stricken was denied below. It was denied for undue delay and it was also denied as apparently in bad faith. It was imperative that Dr. Chen explain in Chen 2 why that decision, why he wasn't trying to avoid that decision through the complaint that he filed in Chen 2. His proper recourse was to appeal that decision in Chen 1. All of those issues were laid out in the briefing on the motion to dismiss below. That issue also is relevant, the timing issue is relevant to the arguments with respect to the 2-6-1 patent. In the briefing, Dr. Chen argues that he simply didn't have time to bring the 2-6-1 patent into the Chen 1 case, but that's just not accurate. The 2-6-1 patent, while it wasn't issued at the time the complaint in Chen 1 was filed, it issued only three months after the complaint was filed. It issued seven months before the close of fact discovery in that case and nine months before the motion to amend was filed. There is absolutely no reason why Dr. Chen could not have brought that claim with respect to the 2-6-1 patent in the Chen 1 case. It's that failure to do that that really supports the claim preclusion arguments here. Claim preclusion isn't limited to just the claims that were actually brought in another case. It also encompasses claims that could have been brought, and as reflected in Dr. Chen's reply brief in this case, he's relying on exactly the same alleged inventive contributions with respect to the 2-6-1 patent that he relied on in Chen 1 with respect to the other three patents, and Judge Klausner rejected, including on credibility grounds. So that claim should have been brought there, and while the court doesn't need to actually make a finding with respect to claim preclusion, I think the public policy against vexatious and piecemeal litigation relates directly to the public's interest in expeditious resolution of litigation, the Ghazali factor, so it's appropriate for the court to consider those facts. If the court is to apply an independent review of the Ghazali factors, I would submit that at least four of the five of those factors strongly support the judge's exercise of his discretion in granting the motion to dismiss below. We just talked about the public's interest in avoiding duplicative litigation, but with respect to the court's need to manage its docket, the local rule that was violated here was plainly intended to give the judge sufficient time to consider the papers before a hearing. Dr. Chen cut the court's time in half, filing the opposition only ten days before the hearing, and never even asked for leave to file that opposition out of time or explain why he filed it out of time. With respect to the risk of prejudice to the defendant's factors, as the Ninth Circuit explained in the Jurich case that was cited in our briefs, the degree of prejudice that has to be shown in order to justify a dismissal on procedural grounds is related to the strength of the excuse for failing to comply. Dr. Chen offered no excuse to Judge Klausner, and it's only on this appeal that he said he was relying on the unentered stipulation, again, directly contrary to the court's local rules and standing orders. Given the weakness of that excuse, under the Ghazali line of cases, under Jurich, there's not a lot of prejudice that needs to be shown in order to support dismissal. Here, I would submit that just putting defendants in the position of having to file a reply brief that the court might not have had adequate time to consider before the hearing is probably sufficient. But even more to the point, allowing Dr. Chen to proceed with a duplicative litigation would have prejudiced defendants in having to continue to fight the same issues that they just won in Chen 1, when Dr. Chen should have brought those issues before the court in the Chen 1 case. Public policy favoring disposition of cases on the merits. Again, this is an issue that Dr. Chen argued in his briefs, suggests that Dr. Chen should have his day in court with respect to the 261 patent. This is Judge Toronto. Can I just ask something? I should know this. Can you clarify the precise timing? If Dr. Chen had filed the brief in opposition to the dismissal motion in a timely fashion, would your reply to that have been due before the judge's ruling in Chen 1? So, the brief was noticed for motion on November 18th. Our brief would have been due at least 14 days before that, so that would have been November 4th, and the decision came out on November 6th. A timely filing would have put you to the burden of filing the reply, because Chen 1 wouldn't have been out yet to save you from that. That's correct, Your Honor, but in that circumstance, I suspect that we would have asked for leave to address that decision, but you're correct on the timing there, Your Honor. So, I think my time is running out here. I'm happy to address further questions that the court has, but I do want to stress that the issue before this court is purely whether the district court judge abused his discretion in enforcing the local rules. In the Ninth Circuit, it's a rare case, indeed, that an appellate court would question the exercise of discretion in connection with the application of the local rules under the facts of this case, where Dr. Chen never explained or never sought leave for filing an untimely opposition brief, and never even addressed the decision that supposedly was the reason for the delay in the first place. Under those facts, I submit that Judge Klausner acted well within his discretion. Any more questions for Mr. Sapko? Not for me, no. Okay, thank you. Thank you, Your Honor. Okay, all right, Mr. Tan, you have the last word. A few quick points. First, regarding the improper purpose finding in the denial of motion for leaving Chen Wan, the parties were in the middle of settlement talks at that time, so Judge Rios might have thought that this was a negotiation tactic. However, Chen, too, was filed after the settlement talks broke down to show that there was no improper purpose. Dr. Chen was only trying to correct inventorship, which has strong public policy underpinnings. And the reliance on the stipulation is not really the reason for our appeal. Our appeal is based on an erroneous fact finding. When the docket filing makes it so apparent that the late filing of the opposition brief is because the party has stipulated to a short stay. So we are not saying that because we have a stipulation, the case cannot be dismissed, but only that the trial judge certainly knew about the stipulation. He denied it before he dismissed the case. So under those circumstances, there could be no reasonable fact finding that Dr. Chen consented to dismissal. For the claim preclusion point that counsel made, we don't believe there can be a rule to say that if a new patent issues after some patent case has been filed, and that new patent has to be brought into the original case. Such a rule will have a very far reaching implication, and we don't believe it's a proper rule. A new patent is a new entity. Rights under the new patent arose when the patent issues, and then a party can certainly file a new suit to assert those rights. So in this case, there is a very strong, regarding the gazillion factors, there's a very strong policy concern to resolve inventorship issues on the merits. As we know, these patents cover a pharmaceutical drug, Erlida. These patents are on the orange book.  And if the inventorship issue is not resolved now, there could be more cases, many more cases disputing it later on. So even just on that factor alone, plus the lack of prejudice, plus there definitely are less severe sanctions available for the district court, we believe an independent weighing of the gazillion factors should compel a result of a remand. I guess I'm not understanding how there could be many more cases when, if we affirm the district court in Chen 1, then the inventorship issue as to the Series A compound is decided. Because the contributions of the other named inventors to the inventions are also put at issue by Dr. Chen. So, you know, there will be, we expect there will be disputes on that. But if you're not an inventor, what would be your standing to challenge the other inventors on the patent? Yes, if the Chen 1 is affirmed and Dr. Chen is no longer an inventor, and the procursion issues we discussed before also came out against him, then yes, Dr. Chen probably will not be asserting inventorship on the first three patents. That's correct. Okay. Okay. Any more questions for Mr. Tong? No. Okay. I thank both counsel. The case is taken under submission. And that concludes this panel's argued cases for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.